USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _______________
DATE FILED: 8/26/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUSTIN T. TOLSTON,

Plaintiff,

-v-

BOWERY RESIDENTS' SERVICES, INC., *et al.*,

Defendants.

1:25-cv-10654-GHW

ORDER OF DISMISSAL WITH LEAVE TO REPLEAD

GREGORY H. WOODS, United States District Judge:

Plaintiff Justin T. Tolson, who asserts that he is an attorney[1] and is proceeding *pro se*, brings this action under the Court's federal question jurisdiction, alleging that Defendants are violating his rights by subjecting him to dangerous conditions in the New York City homeless shelter system. Plaintiff names the following municipal officials and entities as defendants: (1) the City of New York; (2) now-former New York City Department of Social Services ("DSS") Commissioner Molly Wasow Park; (3) now-former New York City Mayor Eric Adams; (4) the New York City Police Department ("NYPD"); and (5) the New York City Department of Homeless Services ("DHS") (collectively, "Municipal Defendants"). He also sues a series of private entities: (6) Bowery Residents' Services, Inc.; (7) the Coalition for the Homeless, Inc.; (8) FJC Security Services; and (9) Community Housing Innovations, Inc (collectively, "Private Defendants"). He solely seeks prospective injunctive relief—namely, the appointment of independent monitors and auditors for certain municipal agencies—on behalf of himself and a putative class of similarly situated persons. Because Plaintiff asserts claims against Park and Adams, and because he seeks only injunctive relief, the Court understands the claims against these defendants as being official-capacity claims.

[1] Because Plaintiff asserts that he is an attorney, he will not be entitled to the special solicitude usually granted to *pro se* litigants. *See Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

Plaintiff asserts claims under: (1) 42 U.S.C. § 1983, for violations of his rights under the First, Fourth, and Fourteenth Amendments; (2) 42 U.S.C. §§ 1985 and 1986; (3) the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733; (3) Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; (4) the civil enforcement provision of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1964(c); and (5) the Americans with Disabilities Act ("ADA"), which the Court construes as being asserted under both Title II and Title III of that statute. Plaintiff also asserts a common law claim of intentional infliction of emotional distress, which the Court construes as arising under the court's supplemental jurisdiction. In the interest of judicial economy, the Court also construes the complaint as asserting an additional common law claim of negligence.

By order dated August 10, 2026, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the following reasons, the Court dismisses the complaint, with 30 days' leave to replead.

## I. Standard of Review

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. A complaint states a claim for relief if the claim is plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To review a complaint for plausibility, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the pleader's favor. *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 555). The Court need not accept, however, "[t]hreadbare

recitals of the elements of a cause of action," which are essentially legal conclusions. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

## II. BACKGROUND

The following facts are drawn from the complaint.[2] Plaintiff states that "[t]his complaint stems from conscience-shocking, abominably squalid, and prison-like conditions within [DHS] shelters coupled with the drugging and mass rape of shelter residents." Dkt. No. 1 at 3. In general, he alleges that the Municipal Defendants create dangerous conditions and fail to remediate them, and as to the Private Defendants, he alleges that they fail to protect him from those dangerous conditions or otherwise advocate for him to the appropriate municipal agencies.

Plaintiff alleges that in mid-December 2025, he arrived in New York and went to DHS's intake shelter on 30th Street in Manhattan. He was given long forms to complete and waited hours for his intake interview. He eventually received a bed and went to sleep, but when he awoke, he noticed severe pain in his anus, leading him to conclude that he had been drugged and raped overnight. He provided a report to the NYPD, went to the hospital for treatment, and when he returned to the intake shelter, he was told that no beds were available. Plaintiff nevertheless found a room with an open bed at the shelter and stayed there overnight. When he awoke the next morning, he "felt that drugs had been placed into [his] anus due to involuntary mouth movement and an elevated heart rate." *Id.* at 12. He later drank a box of juice provided by DHS staff, which caused the same symptoms, leading Plaintiff to believe that the juice also contained drugs. He complained both to the Municipal Defendants and the Private Defendants, but they failed to take any action to

[2] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

investigate or intervene.

Plaintiff was thereafter housed at various DHS shelters in Manhattan and Brooklyn. He alleges that the shelters' bedding was laced with drugs; that their respective staffs served spoiled food; that they fail to provide a dedicated place for prayer and worship; that there are long waits for a bed; that they fail to provide a means for shelter residents to secure their personal property; that there are open drug transactions and drug use; that the shelters are infested with cockroaches and mold; that they fail to provide towels, soap, toiletries, or laundry services; that they permit physical assault by other shelter residents; that the Municipal Defendants fail to initiate safety transfers and that the Private Defendants refuse to advocate for transfers on his behalf; that there is no internet access in the shelters; that they failed to provide him with an ergonomic chair to accommodate a back injury; and that the City of New York's Human Resources Administration ("HRA") delayed processing his application for benefits.

## III. DISCUSSION

### a. Claims on Behalf of the Putative Class

Plaintiff asserts that he is an attorney, but the Court is unable to locate any record of his admission to practice law in this court. Because Plaintiff is not an attorney admitted to practice law in this court, he can represent only his own interests in this action. *See* 28 U.S.C. § 1654; *U.S. ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("[A]n individual who is not licensed as an attorney may not appear on another person's behalf in the other's cause.") (internal quotation marks and citation omitted); *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) (noting that 28 U.S.C. § 1654 "allow[s] for two types of representation: 'that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself'").

Because a *pro se* plaintiff who is not admitted to practice law in the relevant jurisdiction cannot assert claims on behalf of third parties, a *pro se* plaintiff cannot bring class action claims. *See*

*Rodriguez v. Eastman Kodak Co.*, 88 F. App'x 470, 471 (2d Cir. 2004) ("[I]t is well established that 'a *pro se* class representative cannot adequately represent the interests of other class members.'") (citation omitted); *Chapman v. U.S. Dep't of Justice*, 558 F. Supp. 3d 45, 49 (E.D.N.Y. 2021) (dismissing the plaintiff's class action claims because he was "proceeding *pro se* and cannot bring a class action on behalf of others"). The Court therefore dismisses all claims that Plaintiff is asserting on behalf of a putative class, without prejudice to Plaintiff reasserting his putative class claims through counsel.

**b. Claims Under the False Claims Act**

Plaintiff asserts claims under the FCA, which imposes civil liability on any person who, among other things, knowingly presents, or causes to be presented, to an officer or employee of the federal government, a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a). The federal government, or a private person (known as a "relator"), may bring suit for the United States in a *qui tam* action where there has been fraud on the federal government. 31 U.S.C. § 3730(a), (b)(1); *see United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 932 (2009).

Relators act as "partial-assignees of the United States' claim to recovery," *United States ex rel. Eisenstein v. City of New York*, 540 F.3d 94, 101 (2d Cir. 2008) (citation omitted), and the United States "remains the real party in interest[,]" *Flaherty*, 540 F.3d at 93 (internal quotation marks and citation omitted). In order to proceed *pro se*, "[a] person must be litigating an interest personal to him." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998); *see* 28 U.S.C. § 1654. Because a *qui tam* action is "not the relator's 'own' case . . . , nor one in which he has 'an interest personal to him,'" a litigant cannot pursue such an action *pro se*. *See Flaherty*, 540 F.3d at 93 ("Because relators lack a personal interest in False Claims Act *qui tam* actions, we conclude that they are not entitled to proceed *pro se*." (citing 28 U.S.C. § 1654 and *Iannaccone*, 142 F.3d at 558)).

As explained above with regard to the claims on behalf of the putative class, Plaintiff—who is not admitted to practice law in this court—cannot assert claims on behalf of others, including

FCA claims on behalf of the United States. The Court therefore dismisses Plaintiff's FCA claims, without prejudice to Plaintiff reasserting those claims through counsel.

**c. Defendants NYPD and DHS**

Plaintiff names the NYPD and DHS as defendants in this action. The New York City Charter, however, does not authorize either of those municipal agencies to be sued in their own names—that is, neither the NYPD nor DHS are suable entities. *See* N.Y. City Charter ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *id.* at §§ 431-438 (establishing powers of the NYPD); *id.* at ch. 24-A, §§ 610-614 (establishing powers of DHS); *Edwards v. Arocho*, 125 F.4th 336, 354 (2d Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the capacity to be sued under *its municipal charter*."); *Emerson v. City of New York*, 740 F. Supp. 2d 385, 396 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."); *see also Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) ("[T]he NYPD is a non-suable agency of the City."); *Sexton v. Dep't of Homeless Servs.*, No. 24-CV-8895 (DEH), 2025 WL 1334605, at *3 (S.D.N.Y. May 7, 2025) (dismissing claims against DHS as an entity that cannot be sued under the New York City Charter), *appeal dismissed sub nom. Sexton v. Volunteers of Am.*, No. 25-1401, 2025 WL 3514315 (2d Cir. Sept. 24, 2025). The Court therefore dismisses Plaintiff's claims against the NYPD and DHS for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court construes Plaintiff's claims against the NYPD and DHS as being asserted against the City of New York, which is already a named defendant in this action.

**d. Defendants Adams and Park**

Plaintiff sues former New York City Mayor Eric Adams in his official capacity. Under Rule 25(d) of the Federal Rules of Civil Procedure, the Clerk of Court is directed to substitute Zohran

Mamdani, in his official capacity as Mayor of the City of New York, as a defendant in place of former Mayor Adams. This substitution is without prejudice to any defenses that Mayor Mamdani may wish to assert on his own behalf.

Similarly, Plaintiff sues former DSS Commissioner Molly Wasow Park in her official capacity. Under Rule 25(d), the Clerk of Court is directed to substitute Erin Dalton, in her official capacity as Commissioner of DSS, as a defendant in place of former Commissioner Park. This substitution is without prejudice to any defenses that Commissioner Dalton may wish to assert on her own behalf.

**e. Claims Under 42 U.S.C. § 1983**

Plaintiff asserts claims under Section 1983 against both the Municipal Defendants and the Private Defendants. The Court considers the Section 1983 claims against each group of defendants in turn.

**i. Section 1983 Claims Against the Municipal Defendants**

When a plaintiff sues a municipality under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under . . . section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). The same is true of official-capacity claims against municipal officials. *See Monell,* 426 U.S. at 658 ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). In other words, to state a Section 1983 claim against a municipality or against municipal officials in their official capacities, the plaintiff must allege facts showing (1) the existence of a

municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

> A plaintiff may satisfy the policy or custom requirement by alleging one of the following:
>
> (1) a formal policy officially endorsed by the municipality;
>
> (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question;
>
> (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or
>
> (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of the those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).

In the complaint, Plaintiff alleges that the Municipal Defendants are violating his rights under the First, Fourth, and Fourteenth Amendments, but he does not provide plausible allegations that his constitutional rights were violated or that, if they were violated, such violations were caused by a municipal policy or custom. As to most of Plaintiff's Section 1983 claims, which are largely premised on the allegedly dangerous conditions in the non-custodial shelter settings and the Municipal Defendants' failure to investigate or remediate them, there is generally no federal constitutional duty requiring a government official to investigate or protect an individual from harm by private parties. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755-56 (2005); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *Gong v. Sarnoff*, No. 23-CV-0343 (LJL), 2024 WL 3638335, at *7 (S.D.N.Y. Aug. 1, 2024) ("It is settled that the State has no general Due Process obligation to ensure the safety, care, and protection of individuals who are not in its custody. Also, [i]t is well established that [t]here is no constitutional right to an investigation by government officials." (internal quotation marks and citations omitted, alterations in original)); *see*

*also Baltas v. Jones*, No. 21-CV-0469, 2021 WL 6125643, at *14 (D. Conn. Dec. 27, 2021) (The plaintiff "has no 'constitutional right to an investigation of any kind by government officials.'" (citation omitted)); *Buari v. City of New York*, 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021) ("[T]here is no constitutional right to an adequate investigation[.] Accordingly, a failure to investigate is not independently cognizable as a stand-alone claim under Section 1983." (internal quotation marks and citation omitted)).

Similar logic adheres to Plaintiff's other conditions-related Section 1983 claims against the Municipal Defendants, which generally fail because Plaintiff is not in their custody. As the Supreme Court has recognized, a constitutional duty may arise "when the State takes a person into its custody and holds him there against his will," *DeShaney*, 489 U.S. at 200, such as in the case of prisoners or involuntarily committed mental patients, *see Youngberg v. Romeo*, 457 U.S. 307, 319 (1982). In such cases, "the Constitution imposes [on the State] a corresponding duty to assume some responsibility for [the forcibly restrained individual's] safety and general well-being." *DeShaney*, 489 U.S. at 200 ("[W]hen the State . . . so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the . . . Due Process Clause."). But this exception does not apply "to homeless people who voluntarily choose to remain in shelters operated by government entities or contractors." *Oslzly v. Rosenblatt*, No. 14-CV-3638 (SLT) (LB), 2014 WL 4161347, at *7-8 (E.D.N.Y. Aug. 19, 2014); *see Brown v. City of New York*, No. 17-CV-5836 (LDH) (ST), 2018 WL 1770557, at *4 (E.D.N.Y. Apr. 12, 2018) (holding that the Constitution did not impose an affirmative duty of care where a plaintiff "is free to leave the shelter").

Plaintiff also asserts that the Municipal Defendants violated his First Amendment right to free exercise of religion. In support of those allegations, Plaintiff alleges that he requires a quiet

room in order to pray and meditate, and that Defendants do not provide any such space in their shelters. Dkt. No. 1-2 ¶¶ 415-436. As an initial matter, Plaintiff provides no facts suggesting that the Municipal Defendants have any obligation to provide quiet rooms for prayer and meditation in non-carceral settings such as homeless shelters. In any event, to establish a claim under the Free Exercise Clause, a plaintiff must show that "a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022). Plaintiff's allegations, however, indicate that Defendants' alleged practice of not providing a quiet room for prayer inside of shelters applies to everyone in the shelters, not merely to Plaintiff or his religious practices. That is, the alleged policy about which Plaintiff complains is neutral and generally applicable; it does not target Plaintiff or his religious practices. He therefore fails to state a claim under the First Amendment's Free Exercise Clause. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff also asserts a retaliation claim under the First Amendment against the Municipal Defendants. He alleges that the Municipal Defendants denied him certain services in response to his complaints about conditions in the shelters and in response to his preparation of this lawsuit, about which they were allegedly aware. Dkt. No. 1-3 ¶¶ 529-574. To state a claim for retaliation under the First Amendment, a plaintiff must allege facts suggesting that: "(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011). Here, Plaintiff does not plausibly allege that Defendants denied him access to services due to his protected speech, as his complaint is replete with allegations that Defendants and their employees denied him the same services even before they became aware of his protected speech. More importantly, Plaintiff alleges no facts suggests that any retaliation, if it occurred, was the result of a municipal policy or practice. Plaintiff

therefore fails to state a claim for retaliation under the First Amendment.

Thus, Plaintiff fails to state a Section 1983 claim against the Municipal Defendants. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**ii. Section 1983 Claims Against the Private Defendants**

Plaintiff also asserts Section 1983 claims against the Private Defendants. A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are therefore not generally liable under the statute. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). Neither the receipt of public funds nor the existence of a regulatory scheme governing the entity's activities, without more, make a private entity's conduct into state action. *See Rendell-Baker v. Kohn,* 457 U.S. 830, 840-41 (1982); *Horvath v. Westport Library Ass' n*, 362 F.3d 147, 152 (2d Cir. 2004) (noting that a "predominance of public funding" is not conclusive proof of state action).

The activity of a private entity may be considered state action for the purpose of Section 1983 liability in the following situations: (1) when the entity acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) when the state provides significant encouragement to the entity, the entity willfully participates in joint activity with the state, or the entity's functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) when the state has delegated a public function to the entity (the "public function test"). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012).

The fundamental question under each test is whether the private person or entity's challenged actions are "fairly attributable" to a state or local government. *Id.* (quoting *Rendell-Baker*,

457 U.S. at 838). When analyzing whether a private person or entity functions as a state actor under Section 1983, a court must first "identify[ ] the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity." *Id.* (internal quotation marks and citation omitted).

In the complaint, Plaintiff provides no plausible, non-conclusory allegations suggesting that the Private Defendants' conduct alleged in the complaint was "fairly attributable" to a state or local government. *Fabrikant*, 691 F.3d at 207. His allegations do not allow the Court to infer that that any Private Defendant in this action was a "state actor" for purposes of Section 1983. The Court therefore dismisses, for failure to state a claim, all claims under Section 1983 against the Private Defendants. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**f. Claims Under 42 U.S.C. §§ 1985-1986**

Plaintiff also asserts claims under Sections 1985(3) and 1986. To state a claim under Section 1985(3), a plaintiff must show the existence of: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of his right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [§ 1985(3)] conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (per curiam)).

Vague and unsupported assertions of a claim of conspiracy will not suffice. *See, e.g.*, *Wang v. Miller,* 356 F. App'x 516, 517 (2d Cir. 2009) (summary order). To maintain an action under Section 1985, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*,

340 F.3d 105, 110-11 (2d Cir. 2003) (internal quotation marks omitted).

Plaintiff fails to state a claim for conspiracy under Section 1985. Plaintiff alleges no specific, nonconclusory facts suggesting that Defendants or anyone else entered into an agreement to deprive Plaintiff of his civil rights or took any overt act directed towards those ends. He also fails to set forth any facts suggesting that Defendants' conduct was motivated by their animus on the basis of Plaintiff's race, color, or other protected characteristic, or that it resulted in a denial of his rights. The Court therefore dismisses Plaintiff's claims under Section 1985 for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1986 provides a cause of action against anyone who, "having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Mian*, 7 F.3d at 1088 (quoting *Katz v. Morgenthau*, 709 F. Supp. 1219, 1236 (S.D.N.Y. 1989), *aff'd in part and rev'd in part on other grounds*, 892 F.2d 20 (2d Cir. 1989)). Thus, a Section 1986 claim must be predicated upon a valid Section 1985 claim. *Id.* (citing *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978)).

As discussed above, Plaintiff has failed to state a valid conspiracy claim under Section 1985, which is a mandatory predicate for a claim under Section 1986. The Court therefore dismisses Plaintiff's Section 1986 claims for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**g. Claims Under Title VI of the Civil Rights Act of 1964**

Plaintiff also asserts discrimination claims under Title VI of the Civil Rights Act of 1964. Under that statute, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

Most of Plaintiff's allegations fit into a disparate impact framework, as he broadly alleges that Defendants' neglect of conditions in the shelter system disproportionately impacts Black residents

like himself. These allegations of disparate racial impact, however, without plausible allegations that Defendants acted intentionally, are insufficient to state a Title VI claim. *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). Because Plaintiff fails to allege plausible facts suggesting that Defendants intentionally denied him the benefits of a federally funded program, he fails to state a claim under Title VI.

It also appears that Plaintiff attempts to describe a discrete incident of alleged disparate treatment. Specifically, he alleges that he has observed "Black people denied social welfare assistance[,] yet when a group of Hasidic Jews sought assistance, they were given preferential treatment, segregated from the rest of the folks, mainly Black, seeking assistance and provided help." Dkt. No. 1 ¶ 277. While these allegations arguably suggest that *other* Black shelter residents were denied assistance while certain Hasidim were not, Plaintiff does not include any facts from which the Court can infer that Defendants or their employees denied assistance *to him* on the basis of his race. Plaintiff therefore fails to state a claim under Title VI. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**h. Civil RICO Claims**

Plaintiff asserts claims under the civil provision of RICO, which "creates a private right of action for individuals to enforce the RICO statute." *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 322 (E.D.N.Y. 2004). The civil RICO enforcement provision states that "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] . . . may sue . . . in any appropriate United States district court and shall recover threefold the damages[.]" 18 U.S.C. § 1964(c); *see Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 601 (2025) ("A plaintiff has been 'injured in his business or property' if his business or property has been harmed or damaged. Section 1964(c) requires nothing more."). In order to state a violation of Section 1962, and thus, a claim under the civil RICO enforcement provision, a plaintiff must allege facts showing: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering

activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting 18 U.S.C. § 1962(a)-(c)). Such a person must also "allege that he was 'injured in his business or property *by reason of* a violation of section 1962.'" *Id.* (quoting 18 U.S.C. § 1964(c)).

To state a claim of a civil RICO conspiracy under Section 1962(d), a plaintiff must allege facts showing that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999). A plaintiff must also show that "if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *Id.* at 244-45. Racketeering activity is defined to include a wide variety of criminal offenses, such as wire fraud, mail fraud, and money laundering. 18 U.S.C. § 1961(1).

The heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to RICO claims predicated on fraud. *See McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992); *Scalercio-Isenberg v. Goldman Sachs Mortg. Co.*, No. 21-CV-4124 (KPF), 2022 WL 3227875, at *9 (S.D.N.Y. Aug. 9, 2022) (holding that "even when a plaintiff proceeds *pro se*, courts apply the Rule 9(b) pleading standard and dismiss complaints that do not meet its heightened requirements"). A plaintiff must "specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent[,] and plead those events which give rise to a strong inference that [each] defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Rev. v. Minci,* No. 21-CV-320 (AT) (JLC), 2022 WL 1910127, at *3 (S.D.N.Y. June 3, 2020) (quoting *Jus Punjabi, LLC v. Get Punjabi US, Inc.*, 640 F. App'x 56, 58 (2d Cir. 2016)) (cleaned up). "Where multiple defendants are asked to respond to allegations of fraud, the

complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

Finally, conclusory allegations of injury to business or property "will not suffice; rather, a plaintiff must allege a 'concrete financial loss.'" *Jingle Kids USA, LLC v. In Colour Cap., Inc.*, No. 22-CV-7089 (JHR) (SLC), 2023 WL 5016496, at *9 (S.D.N.Y. June 6, 2023), *report and recommendation adopted*, 2023 WL 6389080 (S.D.N.Y. Oct. 2, 2023), *aff'd*, 771 F. App'x 62 (2d Cir. 2019) (summary order)); *see also Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp. 3d 586, 613 (S.D.N.Y. 2015) ("Courts have required that the plaintiff show concrete financial loss in order to show injury under RICO.") (quoting *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 560 (S.D.N.Y. 2014)) (cleaned up)).

Plaintiff does not allege facts that would support a civil RICO claim. As an initial matter, while Plaintiff alleges that certain of Defendants' employees committed crimes against him, he alleges no facts suggesting that any of those acts caused an injury to his "business or property." 18 U.S.C. § 1964(c). Instead, Plaintiff suggests that Defendants misappropriated certain items of property (namely, socks) that were donated to *Defendants*, not to Plaintiff. Dkt. No. 1-3 ¶¶ 473-482. Those allegations are insufficient to show that Defendants' conduct deprived him of *his* property or business. On that basis alone, Plaintiff fails to state a claim under RICO.

Moreover, to the extent that Plaintiff's RICO claims are premised on fraud by Defendants, Plaintiff's conclusory allegations of a fraud fail to comply with Rule 9(b). While Plaintiff alleges that Defendants committed certain crimes and other untoward behavior, the complaint does not meet the heightened pleading standard that applies to claims of fraud by alleging specific facts demonstrating each Defendant' s intent. Plaintiff therefore fails to state a civil RICO claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**i. Claims Under the ADA**

Plaintiff also asserts claims under the ADA. The Court liberally construes Plaintiff's ADA claims as being asserted: (1) against the City of New York, under Title II of the ADA, and (2) against Community Housing Innovations, Inc., under Title III of the ADA. In support of those claims, Plaintiff alleges that he suffers from a back injury, requires use of an ergonomic chair in order to eat his meals and use the computer in the shelters, and that the shelter staff—including staff employed by Community Housing Innovations, Inc.—do not permit the use of chairs in the course of meals or computer-related tasks.

Title II of the ADA, which applies only to public entities, provides, in relevant part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009). Similarly, Title III, which applies to any person "who owns, leases (or leases to), or operates a place of public accommodation," prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."[3] 42 U.S.C. § 12182(a).

For both the Title II and Title III claims, the Court must first resolve the threshold issue of whether the complaint shows that Plaintiff is a person with a disability, within the meaning of the ADA. For ADA purposes, a disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A); *see also Bragdon v. Abbott*, 524 U.S. 624, 637-39 (1998) (concluding that asymptomatic human immunodeficiency virus, or HIV, is covered by

[3] For the purposes of this order, the Court assumes that Community Housing Innovations, Inc., which is alleged to operate at least one shelter in New York City, is a proper defendant under Title III. *See* 42 U.S.C. § 12181(7)(K) ("[P]rivate entities are considered public accommodations . . . if the operations of such entities affect commerce," including "homeless shelter[s] . . . or other social service center establishment[s]."); 28 C.F.R. § 36.104 (including "homeless shelter" as a "place of lodging" covered by Title III).

the ADA because it "substantially limits" the person's ability to reproduce, which is a "major life activit[y]"). As a general matter, temporary injuries do not qualify under 42 U.S.C. § 12102(1)(A) unless those injuries are particularly severe. *See, e.g., Mazur v. New York City Dep't of Educ.*, 53 F. Supp. 3d 618, 636 (S.D.N.Y. 2014) ("Because Plaintiff's injury was only temporary and did not substantially affect her ability to walk, Plaintiff has not shown that she was disabled"), *aff'd*, 621 F. App'x 88 (2d Cir. 2015) (for purposes of the appeal, "assuming her sprained ankle is a disability under the ADA"); *Zick v. Waterfront Comm. of N.Y. Harbor*, No. 11-CV-5093 (CM), 2012 WL 4785703, at *4 (S.D.N.Y. Oct. 4, 2012) ("[T]emporary disabilities do not trigger the protections of the ADA because individuals with temporary injuries are not disabled persons within the meaning of the act."); *cf. Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 330 (4th Cir. 2014) (noting that Congress broadened the definition of " disability" by enacting the ADA Amendments Act of 2008, and concluding that short-term impairments can now qualify as disabilities if they are "sufficiently severe").

In the complaint, Plaintiff states that he injured his back but does not explain how this alleged impairment "substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Plaintiff simultaneously alleges that, within a week after his request for a chair was denied by Community Housing Innovations staff, he "walked from the 42nd Street Times Square subway station to the Randall Island Shelter." Dkt. No. 1-1 ¶ 226. Similarly, Plaintiff alleges that around the same time, he went on another "miles-long walk." *Id.* ¶ 90. Moreover, the complaint indicates that Plaintiff required a new pair of socks due to "all the walking." *Id.* ¶ 473. Thus, the complaint, when read as a whole, does not suggest that Plaintiff's back injury "substantially limits" his ability to walk or stand, which are the only "more major life activities" that Plaintiff suggests may be impaired by his injury. 42 U.S.C. § 12102(1)(A). Because the complaint does not suggest that Plaintiff's injury substantially limits any major life activity, neither the City of New York nor Community Housing

Innovations, Inc. were required to accommodate his injury. Plaintiff therefore fails to state a claim under the ADA. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**j. State-Law Claims**

Although the Court has dismissed all of Plaintiff's claims under federal law, he also asserts claims under New York law. A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

Because Plaintiff's state-law claims are not supported by the Court's supplemental jurisdiction, the Court must consider whether those claims can be maintained under the Court's diversity jurisdiction. To establish jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that the plaintiff and the defendant are citizens of different states. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). It is a person's domicile, not his current address, that determines his citizenship for purposes of Section 1332(a)(1). *See Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998). Domicile is defined as the place where a person "has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). In addition, the plaintiff must allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory

jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted). A plaintiff asserting subject matter jurisdiction "bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998).

At this juncture, the Court assumes, without deciding, that the relief that Plaintiff seeks—the appointment of multiple court monitors and auditors—satisfies the jurisdictional amount in controversy, as that relief, if awarded, would both be highly costly to Defendants and, more importantly for the amount-in-controversy analysis, highly valuable to Plaintiff. *See Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) ("[T]he amount in controversy [in an action seeking only injunctive relief] is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested.") (cleaned up).

It nevertheless remains Plaintiff's burden to allege facts showing that the parties have completely diverse citizenship, and Plaintiff has not satisfied that burden. In the complaint, Plaintiff fails to allege the citizenship of any Defendant. Moreover, Plaintiff's own citizenship, for purposes of Section 1332(a), is not clear. He alleges, without any factual support, that he is a "citizen of the state of Nebraska." Dkt. No.1 at 5. Plaintiff sends mixed messages on this issue, however, as he also asserts in the complaint that he is a "current shelter resident of New York City" Dkt. No. 1 at 5, and on the Civil Cover Sheet, Plaintiff provides a mailing address for himself in Austin, Texas, Dkt. No. 3 at 2). Plaintiff therefore fails to set forth facts from which the Court can infer his domicile, that is, the state where Plaintiff "has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage*, 232 F.3d at 42.

The Court therefore lacks subject-matter jurisdiction of Plaintiff's state-law claims, and the Court dismisses them, without prejudice, on that basis. *See* Fed. R. Civ. P. 12(h)(3).

## IV. Leave to Amend Granted

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)); *see Chowdhury v. New York City Hous. Auth.*, No. 24-3103, 2026 WL 1728277, at *2 (2d Cir. June 12, 2026) (reversing a district court's denial of leave to amend where "better pleading" could potentially lead to the plaintiff establishing the court's subject matter jurisdiction). Because Plaintiff may be able to allege additional facts to state valid claims under federal law, the Court grants Plaintiff 30 days' leave to amend his complaint to detail his claims. Moreover, if Plaintiff files an amended complaint and wishes to establish the Court's diversity jurisdiction of his state-law claims, he must set forth facts showing the state citizenship of every party, including his own state citizenship, and that the amount in controversy exceeds $75,000.00.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

## V. CONCLUSION

The Court dismisses Plaintiff's claims against the New York City Police Department and the New York City Department of Homeless Services as non-suable entities. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court construes Plaintiff's allegations against those Defendants as being asserted against Defendant City of New York.

Plaintiff's complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed, with 30

days' leave to replead. Plaintiff's claims under federal law are dismissed for failure to state a claim, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), and his claims under New York law are dismissed for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3).

An "Amended Complaint" form is attached to this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate the New York City Police Department and the New York City Department of Homeless Services as defendants in this action.

The Clerk of Court is directed to substitute, under Rule 25(d) of the Federal Rules of Civil Procedure, current New York City Mayor Zohran Mamdani in place of former New York City Mayor Eric Adams as an official-capacity defendant in this action. Additionally, the Clerk of Court is directed to substitute, under Rule 25(d), current Department of Social Services Commissioner Erin Dalton in place of former Department of Social Services Commissioner Molly Wasow Park, as an official-capacity defendant.

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated: August 26, 2026
New York, New York

GREGORY H. WOODS
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

______________________________________

______________________________________
Write the full name of each plaintiff.

_____CV_______________
(Include case number if one has been assigned)

-against-

**AMENDED**

**COMPLAINT**

Do you want a jury trial?
☐ Yes ☐ No

______________________________________

______________________________________

______________________________________

______________________________________
Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐ **Federal Question**

☐ **Diversity of Citizenship**

### A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

____________________________________________________________

____________________________________________________________

____________________________________________________________

____________________________________________________________

### B. If you checked Diversity of Citizenship

#### 1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , ____________________________________, is a citizen of the State of
(Plaintiff's name)

________________________________________
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

________________________________________.

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, ______________________________, is a citizen of the State of
(Defendant's name)

______________________________

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

______________________________.

If the defendant is a corporation:

The defendant, ______________________________, is incorporated under the laws of

the State of ______________________________

and has its principal place of business in the State of ______________________________

or is incorporated under the laws of (foreign state) ______________________________

and has its principal place of business in ______________________________.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

______________________________
First Name Middle Initial Last Name

______________________________
Street Address

______________________________
County, City State Zip Code

______________________________ ______________________________
Telephone Number Email Address (if available)

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

_______________________________________________
First Name Last Name

_______________________________________________
Current Job Title (or other identifying information)

_______________________________________________
Current Work Address (or other address where defendant may be served)

_______________________________________________
County, City State Zip Code

Defendant 2:

_______________________________________________
First Name Last Name

_______________________________________________
Current Job Title (or other identifying information)

_______________________________________________
Current Work Address (or other address where defendant may be served)

_______________________________________________
County, City State Zip Code

Defendant 3:

_______________________________________________
First Name Last Name

_______________________________________________
Current Job Title (or other identifying information)

_______________________________________________
Current Work Address (or other address where defendant may be served)

_______________________________________________
County, City State Zip Code

Defendant 4: ______________________________

First Name Last Name

______________________________

Current Job Title (or other identifying information)

______________________________

Current Work Address (or other address where defendant may be served)

______________________________

County, City State Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: ______________________________

Date(s) of occurrence: ______________________________

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Dated                                        Plaintiff's Signature

First Name          Middle Initial          Last Name

Street Address

County, City          State          Zip Code

Telephone Number          Email Address (if available)

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.